IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**JACOB BARRETT,**

              Plaintiff,

   v.

**JEREMY WAGNER, Superintendent, et
al.,**

              Defendants.

No. 6:25-cv-01171-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Jacob Barrett, an adult in custody (AIC) of the Oregon Department of Corrections
(ODOC), is proceeding without counsel in this 42 U.S.C § 1983 action against Defendants, all of
whom are institutional arms of the state of Oregon or state employees. *See generally* Compl., [ECF
2]. He brings claims a Fourteenth Amendment Due Process Clause claim, a First Amendment
retaliation claim, and a state law breach of contract claim. *Id.* at ¶¶ 1. The crux of Barrett's
Complaint is that Defendants denied him procedural due process in his prison disciplinary hearing
and that Defendants retaliated against him for asserting a breach of contract defense to the
misconduct report. *See id* at ¶ 3. Defendants move to Dismiss Barrett's Complaint for lack of
subject matter jurisdiction and failure to state a claim. Mot. to Dismiss, [ECF 19]; *see also* Supp.
to Mot., [ECF 30] (clarifying that State Defendants "seek to dismiss all Defendants from Plaintiff's

1 – Opinion and Order

complaint under Fed. R. Civ. Pro. 12(b)(6)" with prejudice). As explained below, I grant Defendants' Motion and dismiss Barrett's Complaint but grant him leave to amend his First Amendment Retaliation claim.

## BACKGROUND

### I.    ODOC's Switch Console Program

Barrett is a prisoner at the Oregon State Correctional Institution (OSCI). [ECF 2] at ¶ 6. Around 2022, ODOC's Food Betterment Program, "an official ODOC program," began selling Nintendo Switch Game Consoles as an incentive item at OSCI—the "Switch program." *Id.* at ¶¶ 22, 27, 29. Defendants developed and approved a physical hardware modification to disable the Wi-Fi in the consoles sold to inmates—disconnecting wires from the motherboard—but "did not make a good faith effort to" confirm that the Wi-Fi on the consoles was disabled. *Id.* at ¶¶ 28, 32, 35–36, 117. Barrett signed the Food Betterment Program's "take it or leave it" contract to purchase a Switch console, but the contract did not stipulate that the console's Bluetooth capabilities would be disabled or otherwise were not permitted for AIC's to access." *Id.* at 41, 44. Barrett understood that disabling all Wi-Fi capabilities on the console meant that "the OSCI Physical Plant will disable the WiFi to prevent Internet access," but "he did not understand" that to mean that the Bluetooth would be disabled. *Id.* at 50–51.

### II.    Barrett's Discipline

#### A.    Disciplinary Misconduct Report and Hearing

In August 2024, Defendant T. Halseth, a correctional officer (CO) at OSCI, confiscated Barrett's console because it was altered and could receive Wi-Fi. *Id.* at ¶ 98. A couple days later, Barrett filed a grievance against Defendant Hyde, a correctional captain, about his confiscated console. *Id.* at ¶ 102. It appears that the grievance alleged that Defendants Halseth and Hyde knew

2 – Opinion and Order

most "first generation" consoles like Barrett's had Wi-Fi and Bluetooth capability but targeted only certain prisoners for discipline. *See id.* at ¶ 105. Barrett alleges Defendants Matlock and N. Nawaz also only targeted certain prisoners for discipline for having Wi-Fi and Bluetooth enabled consoles. *Id.* at ¶¶ 107–110.

On September 19, 2024, a prison official issued Barrett a disciplinary report (DR) alleging that he had violated the OSCI's AIC handbook by reconnecting his console's Wi-Fi and Bluetooth functionality. *Id.* at ¶ 117. Barrett had his disciplinary hearing on September 26, 2024, but it "was cancelled with no notice to [him.]" *Id.* at ¶¶ 125–26. After his hearing was cancelled, Barrett submitted a written request for investigation and witnesses, which was returned unprocessed. *Id.* at ¶ 141. When he asked the unit Sergent about it, the Sergeant refused to forward the request to the hearing officer and suggested that Barrett "just bring it into the hearing." *Id.* at ¶ 143.

Barrett's hearing was rescheduled for October 3, 2024. *Id.* at ¶ 144. The hearing officer, Defendant Langston, denied Barrett's request for "AIC witnesses, documentary evidence (including video evidence), and questions for staff." *Id.* at ¶¶ 147, 152–54. After some back and forth, however, Defendant Langston "agreed to postpone the hearing" so that staff witnesses could respond to questions. *Id.* at ¶¶ 155–56. Barrett moved for Defendant Langston to recuse herself due to bias on October 8, 2024. *Id.* at ¶ 172.

Two days later, on October 10, 2024, Defendant Langston reconvened Barrett's disciplinary hearing. *Id.* at ¶ 173. Barrett orally moved for Langston to recuse herself, but she refused. *Id.* at ¶¶ 174–77. At the hearing's conclusion, Defendant Langston found Barrett guilty and sanctioned him to "20 Days Loss of Privileges; 20 days segregation (suspended): $100 fine (suspended); 1 year loss of visiting (suspended)." *Id.* at ¶ 181. Another consequence of the guilty

3 – Opinion and Order

finding was a drop in Barrett's incentive level from level 3, the highest, to level 1, the lowest[1], which Barrett alleges was done to retaliate against him for trying to raise a breach of contract defense at his hearing. *Id.* at 279. A lower incentive level results in a loss of various privileges, including spending at the canteen, yard time, ability to attend educational programs, and housing and job opportunities. *Id.* at ¶ 280. The day after his disciplinary hearing, Barrett sent a first level administrative review of Defendant Langston's findings to Defendant Wagner. *Id.* at ¶ 182. The same day he learned that all his video visits with his family were suspended because he "had been convicted of the misconduct report." *Id.* at ¶ 183.

On October 18, 2024, Barrett was fired from his Physical Plant carpentry shop job because of his disciplinary conviction. *Id.* at ¶¶ 190, 192. Barrett alleges that no prison policy prohibits prisoners from having Physical Plant jobs if they have a misconduct report and that he was fired because he exercised his "due process right in [his] DR hearing." *Id.* at ¶¶ 193, 199.

On October 23, 2024, Barrett learned that his administrative appeal of his disciplinary conviction was successful and that his "DR was vacated and remanded for a new hearing before a new hearing officer." *Id.* at ¶ 210. According to Barrett, however, Defendants only reopened his hearing "to retaliate further against me and prevent me from having a job in my previously assigned work areas for calling staff as witnesses" in his disciplinary hearing. *Id.* at ¶ 213.

**B.    Rehearing**

On October 24, 2024, Barrett had a new disciplinary hearing before a new hearing officer, Defendant Nevil. *Id.* at ¶ 215. At the end of the hearing, Defendant Nevil refused to dismiss Barrett's misconduct report based on his breach of contract defense and postponed the hearing to

---

[1] Barrett alleges elsewhere in his Complaint that his incentive level dropped from level three to level two. *Id.* at ¶ 290. Regardless of how much it dropped, it dropped at least one level.

4 – Opinion and Order

gather additional evidence. *Id.* at ¶¶ 230–31. Barrett's motion to recuse Defendant Nevil was denied. *Id.* at ¶ 246.

On November 6, 2024, Defendant Nevil reopened Barrett's disciplinary hearing. *Id.* at ¶ 252. She refused his request to ask an AIC who had worked in the electrical shop questions. *Id.* at ¶¶ 256–57. At the end of the DR hearing, Barrett was found guilty. *Id.* at ¶ 258. On November 24, 2024, Barrett learned that his "codefendants" had their findings of guilt and sanctions reversed based on additional evidence submitted after their hearings. *Id.* at ¶ 273. Barrett believes that Defendants withheld this additional evidence from him to retaliate against him for raising a breach of contract claim in his disciplinary hearing. *Id.* at ¶ 275.

Barrett brings three claims for relief against ODOC, the Food Betterment Program, and defendant ODOC employees in their individual and official capacities. First, Barrett alleges a Fourteenth Amendment Due Process Clause claim based on multiple procedural due process violations in his disciplinary hearings and Defendants' requirement that Barrett "prove the innocence of other AIC's charged with the same offenses." *Id.* at ¶ 301. Second Barrett alleges a First Amendment Retaliation claim based on Defendants' issuing misconduct reports against AIC's Barrett called as witnesses in his disciplinary hearing and taking adverse actions against him, like firing him from his job, because he raised a breach of contract defense in his disciplinary hearing. *Id.* at ¶ 303. Third, Barrett brings a breach of contract claim where he appears to allege breach of the "Switch Contract between the FBP and Switch Program participants" based on fraud and misrepresentation because the contract "did not state Bluetooth capabilities would be disabled or otherwise not permitted for AIC's to access" and Defendants did not disable all Wi-Fi

capabilities. *Id.* at ¶ 306–08.[2] Barrett seeks declaratory, injunctive, and compensatory relief. *See id.* at pp. 56–57 (Relief Requested).

## DISCUSSION

Defendants argue for dismissal on two grounds. First, Defendants assert that I lack subject matter jurisdiction over Barrett's claims against ODOC, the Food Betterment Program, and defendant ODOC employees in their official capacities because they are barred by the Eleventh Amendment. [ECF 19] at 2, 11; Fed. R. Civ. P. 12(b)(1). Second Defendants contend Barrett fails to state plausible claims for relief on any of his three claims. [ECF 19] at 2; Fed. R. Civ. P. 12(b)(6).

## II.      Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

"Though not jurisdictional in the traditional sense," whether the Eleventh Amendment bars Barrett's breach of contract claims and his claims against the State, its entity, and its employees in their official capacities presents a threshold issue. *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000). Accordingly, I consider Defendants' subject matter jurisdiction argument first.

### A.      Legal Standard

The Eleventh Amendment bars citizen suits against states, institutional arms of the state, and state employees in their official capacities when the relief sought is retrospective, i.e., for money damages. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (recognizing that the Eleventh Amendment bars suits for damages against state officials in their official capacity because a judgment would

---

[2] The Complaint alleges that Barrett exhausted his administrative remedies, and Defendants do not dispute that he did. *See id.* at ¶ 299; *see generally*, [ECF 19].

impose liability on the state). One exception to the Eleventh Amendment's bar is when the relief sought is prospective relief against a state official, such as injunctive relief, the relief is allowable. *Hardin*, 223 F.3d at 1045. Simply asking for injunctive relief, however, does not clear the path for suit. *See id.*; *see also Corey v. White*, 457 U.S. 85, 90–91 (1982) ("[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction"). If an alleged violation is not ongoing, the relief sought is retrospective and barred by the Eleventh Amendment. *See Hardin*, 223 F.3d at 1045.

## B.    Analysis

Even liberally construing Barrett's Complaint, most of the relief that he seeks against ODOC, the Food Betterment Program and defendant ODOC employees in their official capacities is retrospective. *See also Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (courts must construe pro se pleadings liberally). For example, Barrett asks that I order Defendants to reassign him to his carpentry shop job and declare that defendants retaliated against him and denied him due process during his administrative review process. [ECF 2] at ¶ 308; *see also Papasan v. Allain*, 478 U.S. 265, 280–81 (1986) (a desire to be restored to a prior position is a request for retrospective relief). Because they are barred by the Eleventh Amendment, I dismiss Barrett's retrospective claims against ODOC, the Food Betterment Program and defendant ODOC employees in their official capacities with prejudice because it is clear that amendment cannot cure the deficiencies in Barrett's requests for retrospective relief. *See Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010) (where amendment would be futile, leave to amend is properly denied).

As noted above, however, the Eleventh Amendment does not bar claims for prospective declaratory and injunctive relief against state officers to stop ongoing violations of federal law. *Hardin*, 223 F.3d at 1045. Barrett's Complaint seeks to enjoin defendant ODOC employees in

their official capacities from retaliating against him and chilling his exercise of his constitutional rights. [ECF 2] at ¶ p. 56 (Relief Requested). It is not absolutely clear that Barrett cannot amend his request for injunctive relief against retaliation to state a claim for prospective relief. *Ventress*, 603 F.3d at 680. Accordingly, in an abundance of caution, I grant Barrett leave to amend this claim against defendant ODOC employees in their official capacities. Any amended complaint must explain what ongoing retaliation Barrett seeks to enjoin.

## II.    Rule 12(b)(6) – Failure to State a Claim

### A.    Legal Standard

A court may dismiss a claim that fails to state claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted). A court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.* When considering a motion to dismiss, "a court is obligated to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).

A 42 U.S.C § 1983 claim must allege that a person acting under the color of state law committed the alleged violation. *West v. Atkins*, 487 U.S. 42, 48 (1988). To impose liability on an individual defendant under § 1983, a plaintiff must show that the defendant proximately caused the deprivation of the federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

8 – Opinion and Order

A plaintiff can establish this by showing that a defendant's affirmative act, participation in another's affirmative act, or failure to perform an act which he is legally required to do caused the deprivation of which the plaintiff complains. *Id.* at 633. A supervisor may be liable under § 1983 only if a plaintiff shows: (1) personal involvement in the alleged deprivation, or (2) a sufficient causal connection between the supervisor's alleged wrongful conduct and the deprivation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### B.    Analysis

#### 1. Plaintiff's Due Process Claim

The Fourteenth Amendment requires state prison officials to provide prisoners with due process before depriving them of a liberty interest. *See* U.S. Const. amend. XIV, § 1. To state a plausible procedural-due-process claim, Barrett must allege that (1) he was deprived of a protected liberty or property interest, and (2) the procedures followed by the state in depriving him of that interest were constitutionally insufficient. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (per curiam). A liberty interest may arise from the Constitution or from state law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). State prison regulations create a protected liberty interest in avoiding particular prison confinement conditions if the challenged condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v Conner*, 515 U.S. 472, 484 (1995).

9 – Opinion and Order

Barrett's Complaint alleges that defendant ODOC employees violated his right to procedural due process during his disciplinary hearing in various ways, including not allowing him to present witnesses during his hearing and giving more weight to staff witnesses over AIC witnesses. *See e.g.*, [ECF 2] at 300–301. Defendants move to dismiss Barrett's Fourteenth Amendment claim on the grounds that he cannot establish the first element of a Due Process Clause claim—that his disciplinary hearing deprived him of a protected liberty or property interest. [ECF 19] at 6–7.

### a. *video visits*

It is well established that the Fourteenth Amendment's Due Process Clause does not guarantee a right of unlimited visitation. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989). The Ninth Circuit and other circuits have held the Due Process Clause does not protect a prisoner's right to contact visits. *See Dunn v. Castro*, 621 F.3d 1196, 1203 n.4 (9th Cir. 2010) (listing cases from other circuits upholding prison official's ability to restrict contact visitation for prisoners). If a prisoner has no protected liberty interest in contact visits under the Fourteenth Amendment, then he cannot have a protected liberty interest in video visits. *See id.*; *see also Thompson*, 490 U.S. at 460–61 ("[a]s long as the conditions or degree of confinement to which the prisoner is subject is within the sentence imposed upon him and not otherwise violative of the Constitution, the Due Process Clause doe not in itself subject an inmate's treatment by prison authorities to judicial oversight.") Accordingly, I find that Barrett has not established a constitutionally protected liberty interest in video visits with his family. *Wilkinson*, 545 U.S. at 221. I likewise find that Barrett has not established a state-created liberty interest in the right to video visits. Even if Barrett had identified a state law regarding unfettered video visitation for prisoners, he could not establish that it created a liberty interest because restricting video visits

does not "imposes atypical or significant hardship" when compared to ordinary prison life. *Sandin*, 515 U.S. at 484.

I dismiss Barrett's Fourteenth Amendment claim based on restriction of his video visits with prejudice because, even if I allowed him to amend, Barrett could not successfully plead a constitutionally or state-created liberty (or property) interest in video visitation. *See Ventress*, 603 F.3d at 680.

### b. job loss

The Ninth Circuit and other circuits have held that the Due Process clause does not create a liberty or property interest in a prisoner's job. *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004); *see also Ingram v. Papalia*, 804 F.2d 595, 596–97 (10th Cir. 1986) (same and listing other circuit decisions finding no constitutionally protected property or liberty interest in prison employment). Barrett's Complaint, therefore, does not establish a constitutionally protected liberty (or property) interest in his prison job. *See Walker*, 370 F.3d at 973. Similarly, Barrett's Complaint does not plausibly allege a state-created liberty interest in his carpentry shop job. Barrett does not identify a state law governing a prisoner's interest in his job, and even if he did, he could not demonstrate that terminating a prison job imposes an atypical or significant hardship as compared to ordinary prison life. *Sandin*. 515 U.S. 484. I dismiss Barrett's Fourteenth Amendment claim based on loss of his carpentry shop job because, even if amendment were allowed, Barrett could not successfully plead a constitutionally or state-created liberty (or property) interest in his prison job. *See Ventress*, 603 F.3d at 680.

### c. loss of level one privileges

Defendants do not cite, and I have not found, a Supreme Court or published Ninth Circuit case addressing whether a prisoner has constitutionally protected liberty interest in an incentive

11 – Opinion and Order

level that allows increased privileges like yard access, educational opportunities, and housing incentives. The Ninth Circuit has held, however, that the Due Process Clause does not create a liberty interest in privileges like prison education classes. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987). Moreover, the Supreme court has recognized that "[t]he Due Process Clause, of its own force, protects prisoners from conditions that depart from the sentence imposed on them in a way that is "qualitatively different from the punishment characteristically suffered by a person convicted of a crime and has stigmatizing consequences." *Sandin*, 515 U.S. at 472 (cleaned up).

Given the lack of protected liberty interest in prison education classes and the scope of Due Process Clause protection for prisoners, I find that Barrett's Complaint does not plausibly allege a constitutionally protected liberty interest in his incentive level. I also find that it lacks any plausible allegation of a state-created liberty interest in a prisoner maintaining his incentive level. Even if Barrett identified an applicable prison regulation or policy, he could not show that reducing a prisoner's incentive level such that it affects his yard access and educational opportunities imposes an atypical or significant hardship as compared to ordinary prison life. *Sandin*. 515 U.S. 484. I dismiss Barrett's Fourteenth Amendment claim based on loss of his level one privileges with prejudice because amendment would be futile. *See Ventress*, 603 F.3d at 680.

### 2. Plaintiff's Retaliation Claim

A prisoner First Amendment retaliation claim has five basic elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A plaintiff must allege: (1) he engaged in protected conduct, (2) a prison official subjected him to an adverse action; (3) a causal connection between the protected conduct and the adverse action, (4) the prison official's actions would chill or deter a person of ordinary firmness from engaging in the conduct or that he suffered some other harm that

12 – Opinion and Order

is more than minimal, and (5) the retaliatory conduct did not advance a legitimate penological goal. *See Wilson v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *see also Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (listing elements of a prison First Amendment retaliation claim). The Ninth Circuit has recognized reporting prison staff misconduct as protected conduct. *See e.g.*, *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (reporting staff misconduct). Defendants argue that Barrett fails to state a plausible First Amendment Retaliation claim and dismissal is appropriate. [ECF 19] at 8–9.

The protected conduct that Barrett alleges is calling witnesses in his disciplinary hearing and exercising his right to present a defense in his disciplinary hearing. *See* [ECF 2] at ¶¶ 139, 302–03. Construing Barrett's Complaint liberally and giving him every benefit of the doubt at the motion to dismiss stage, his allegations about calling witness and presenting a defense constitute reporting staff misconduct, which is protected First Amendment conduct. *See Wilhelm v. Rotman*, 680 F. 3d 1113, 1121 (9th Cir. 2012). The adverse actions that Barrett alleges that Defendants took are punishing him more harshly than similarly situated AICs, threatening him with retaliatory transfers, revoking his visitation privileges, firing him from his job, and reducing his incentive level from level 3 to level 1. [ECF 2] at ¶¶ 283–295, 303; Resp., [ECF 25] at 24; *see also Brodheim*, 584 F.3d at 1269 (recognizing that threat of transfer is sufficient allegation of an adverse action). But even with a liberal construction, Barrett does not plausibly allege a causal connection between his protected activity and the adverse consequences, that his conduct was chilled, or that there was no legitimate penological interest. For example, Barrett's allegations that he was subjected to adverse actions because of his misconduct report do not establish any connection between his protected activity of defending himself at his disciplinary hearing and the actions. *See e.g.*, ¶ 295 (alleging denial of educational opportunities "as a result of the misconduct report"); ¶ 286 (alleging

13 – Opinion and Order

he was fired from his prison job because of the "misconduct report for the Switch"). The Complaint is also devoid of any allegations that the adverse actions chilled him from his efforts to defend himself in his disciplinary hearing[3] or that Defendants lacked a legitimate penological goal in punishing him. *See Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (in liberally interpreting pro se complaints, courts may not supply essential elements of a claim that were not pled).

Accordingly, I dismiss Barrett's First Amendment Retaliation claim. In an abundance of caution, I grant him leave to amend his First Amendment claim against defendant ODOC employees because it is not absolutely clear that amendment would be futile. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### 3. Breach of Contract Claim

To state a claim for breach of contract, a plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach and damages. *Moyer v. Columbia State Bank*, 316 Or. App. 393, 403–30 (2021). Defendants move to dismiss this claim on the grounds that Barrett does not plausibly allege a claim because he does not allege damages. [ECF 19] at 10–11.

It appears that Barrett's breach of contract claim is against the Food Betterment Program and fails for lack of subject matter jurisdiction. *See* [ECF 2] at ¶ 41 (referring to the contract "between FBP and the AIC Switch program participant"); *Pennhurst*, 465 U.S. at 100–01 (states and their entities are immune under the Eleventh Amendment from suits brought in federal court for damages or injunctive relief). To the extent, however, that Barrett brings his breach of contract

---

[3] The Complaint's only reference to "chilling" is Barrett's request for injunctive relief that Defendants "cease chilling my First and Fourteenth Amendment rights."

14 – Opinion and Order

claim against defendant ODOC employees in their individual capacities, I agree with Defendants that Barrett fails to state a plausible claim because he does not allege the existence of a contract between defendant ODOC employees and himself and he does not allege damages. I dismiss any breach of contract claim against defendant ODOC employees in their individual capacities without leave to amend because it is absolutely clear that Barrett cannot amend his Complaint to plausibly allege the existence of a contract between himself and ODOC employees. *See Akhtar*, 698 F.3d at 1212.

### 4. Linking Defendants to Alleged Deprivations

Finally, Defendants assert that I must dismiss Barrett's Complaint because he fails to sufficiently allege the ODOC employee defendants' personal participation in the alleged deprivation of his constitutional rights. [ECF 19] at 11–16. To plausibly plead a § 1983 claim, a plaintiff is required to show that a defendant proximately caused the deprivation of a federally protected right. *Leer*, 844 F.2d at 634. Barrett is cautioned that any amended complaint that he files must allege how each named defendant personally participated in the alleged deprivation of his constitutional rights.

### CONCLUSION

I grant Defendants' Motion to Dismiss. [ECF 19]. I dismiss the following claims for lack of subject matter jurisdiction with prejudice: (1) Barrett's First and Fourteenth Amendment and breach of contract claims against ODOC and the Food Betterment Program, and (2) Barrett's First and Fourteenth Amendment claims for retrospective relief against defendant ODOC employees in their official capacities.

15 – Opinion and Order

I dismiss the following claims against defendant ODOC employees in their individual capacities for failure to state a claim with prejudice: (1) Barrett's Fourteenth Amendment Due Process Claim and (2) Barrett's breach of contract claim.

I dismiss Barrett's First Amendment retaliation claim against defendant ODOC employees in their official and individual capacities without prejudice. As explained above, any claim against defendant ODOC employees in their official capacity for injunctive relief must sufficiently state how the requested relief is prospective—how it seeks to remedy an ongoing violation. Any amended claims for retrospective relief must be against defendant ODOC employees in their individual capacities only and must explain how each defendant proximately caused the alleged violation. *Leer*, 844 F.2d at 634.

Any amended complaint is due within thirty days from the date that this Order is filed.

IT IS SO ORDERED.

DATED this day of June, 2026.

MICHAEL W. MOSMAN
United States District Judge

16 – Opinion and Order